UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RICHARD JUDSON,

                Plaintiff,

v.                                                          Case No.  5:06-cv-346-Oc-10GRJ

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for a period of disability and disability insurance benefits and supplemental security income payments. (Doc. 1.)  The Commissioner has answered (Doc. 8), and both parties have filed briefs outlining their respective positions. (Docs. 17 & 18).  For the reasons discussed below, the Commissioner's decision is due to be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. §405(g).

## I.  PROCEDURAL HISTORY

On August 6, 2003, Plaintiff filed an application for a period of disability and disability insurance benefits (R. 48-50) and an application for supplemental security income (R. 168-70), alleging a disability onset date of April 11, 2003 in both applications.  Plaintiff's applications were denied initially and upon reconsideration. (R. 34-36, 39-45.)  Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge

("ALJ"). (R. 46.)  After an administrative hearing (R. 394-429), the ALJ issued a decision unfavorable to Plaintiff on March 13, 2003 (R. 176-220.) Plaintiff's request for review of the hearing decision by the Social Security Administration's Appeals Council was denied.  (R. 3-6.)  Plaintiff then appealed to this Court.

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] See 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[5]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

---

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[18] Walker at 1003.

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff alleges that he became disabled on April 11, 2003. (R. 48-50; 168-70). He continued to work on a part-time basis as a tow-truck driver or service driver during 2003, 2004 and 2005.  Plaintiff's income tax returns in the record show wages, salaries and tips in the amount of $6,455 in 2003 and $4,004 in 2004.[22]  In his application, Plaintiff stated that he was unemployed from April 2003-November 2003 but began driving a wrecker truck for National Auto from November 2003 through September 2004; drove a service truck for Top Gun Towing from September 2004 through April 2005; and drove a self-loading tow truck for Direct Towing from April 2005 through June 2005. (R. 100-105.)  At the hearing, Plaintiff testified that he was working four days a week in 2003 and three to four days a week in 2004. (R. 213.)  Plaintiff further testified

---

[19] Wolfe at 1077-78.

[20] See id.

[21] See Doughty at 1278 n.2.

[22] Social Security records show that Plaintiff's FICA earnings reported for 2004 were $15,746.50. (R. 56-58.)

that from April 2005 through June 2005 he worked two days a week for a weekly total of 14 or 15 hours and that he did not work more hours due to his arthritis and back pain. (R. 182-83.)  Plaintiff testified that he was able to take breaks at his current job. (R. 184.)  Based on Plaintiff's part-time work during 2003, 2004 and 2004, the ALJ concluded that Plaintiff was engaged in substantial gainful activity.

The record shows that during the relevant time period Plaintiff had two treating physicians – Charles R. Mills, M.D. (R. 128-38, 153-55) and David M. Karp, M.D. (R. 158-60.)  After treating Plaintiff for more than two years, Dr. Mills completed a RFC assessment on June 10, 2005. (R. 148-52.)  Dr. Mills opined that Plaintiff could occasionally lift less than 10 pounds, frequently lift less than 5 pounds, stand and/or walk for less than 2 hours in an 8 hour workday, and sit for less than 4 hours in an 8 hour work day.  Dr. Mills further opined that Plaintiff's capacity for pushing and or pulling was limited in his upper and lower extremities and that Plaintiff had additional postural, manipulative and environmental limitations.  On April 25, 2005, Dr. Karp noted in a progress note that Plaintiff was "limited to light duty, no lifting greater than ten pounds." (R. 159.)

There are also three physical residual function capacity ("RFC") assessments of record which were performed by non-examining state agency physicians on October 21, 2003, January 8, 2004, and May 19, 2004. (R. 112-27, 140-47.)  Based on their review of the medical records, all three physicians concluded that Plaintiff could occasionally lift/carry up to 20 pounds, frequently lift/carry up to 10 pounds, walk/stand for about six hours in an eight-hour workday, and push and/or pull without limitation.

Despite these opinions by Plaintiff's treating physicians and the non-examining state agency physicians, the ALJ concluded that Plaintiff could perform the functional demands of the full range of medium level exertional work, or work which requires maximum lifting of fifty pounds, frequent lifting of twenty-five pounds, and standing, walking or sitting no more than six hours daily. (R. 17.)

## IV. DISCUSSION

Plaintiff argues that the ALJ erred at step one and step four. For the following reasons, the Court agrees.

At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity since his alleged date of disability onset – April 11, 2003. The regulations define "substantial gainful activity" as work that involves significant mental and physical activities and that is the kind of work that is usually done for pay or profit.[23] The work may be substantial even if it is done on a part-time basis or the claimant does less, gets paid less, or has less responsibility than when the claimant worked before.[24] "Generally, in evaluating . . . work activity for substantial gainful activity purposes, [the SSA's] primary consideration will be the earnings . . . derive[d] from the work activity."[25] Earnings reported on income tax returns raise a presumption that the taxpayer was gainfully employed, but the presumption is rebuttable.[26] Earnings that will ordinarily

---

[23] 20 CFR §404.1572(a).

[24] 20 CFR §404.1572(b).

[25] Martinez v. Commissioner of Social Security, 132 Fed.Appx. 310 (11th Cir. 2005)(quoting 20 CFR §404.1574(a)(1).)

[26] See Johnson v. Sullivan, 929 F.2d 596, 598 (11th Cir. 1991).

show engagement in substantial gainful activity include average monthly earnings of over $800 in 2003 and $810 in 2004.[27]

While Plaintiff may have been engaged in substantial gainful activity, the problem with the ALJ's decision is that the ALJ failed to identify and discuss in any meaningful manner the evidence that supported her conclusion.  Indeed, the Eleventh Circuit has recognized that the Social Security Administration's "primary consideration" in evaluating work activity for substantial gainful activity purposes will be the earnings derived from the work activity.[28] While the ALJ noted that Plaintiff had worked as a tow truck driver and/or service driver in 2003, 2004 and 2005, notably the ALJ did not discuss or identify what earnings Plaintiff derived from his work and whether Plaintiff's earnings met the Social Security Disability thresholds for substantial gainful activity.[29] Nor did the ALJ discuss the other regulatory guides for determining if work done by a claimant shows that the claimant is able to do substantial gainful activity.[30]

Instead, the ALJ merely noted that Plaintiff reported that he stopped working in April, 2003 because "my employer & I agreed to part ways."  The ALJ fails to explain what (if any) significance this fact has in the substantial gainful activity analysis. Additionally, the ALJ cited two regulations in support of her conclusion that Plaintiff was

---

[27] See 20 CFR §404.1574(b)(2)(ii).

[28] Martinez v. Commissioner of Social Security, 132 Fed.Appx. 310 (11th Cir. 2005)(quoting 20 CFR §404.1574(a)(1).)

[29] Social Security regulations address the issue of whether work activity shows that a claimant can engage in substantial gainful activity by means of a list of amounts of earnings for given years.  If a claimant's earnings exceed the amount listed for the relevant period, the work activity ordinarily is considered substantial and gainful.  See 20 C.F.R. §404.1574.  The earnings threshold for substantial gainful activity was $800 a month in 2003 and $810 a month in 2004. See Doc. 18, Attachment 1.

[30] See e.g., 20 C.F.R. §404.1574.

engaged in substantial gainful activity – 20 C.F.R. §404.1566(c) and §416.966(c)(8)[31] – neither of which are relevant to the step one inquiry.  Accordingly, the Court concludes that the ALJ failed to articulate any basis for her conclusion at step one that Plaintiff was engaged in substantial gainful activity.

Even though the ALJ concluded that Plaintiff was engaged in substantial gainful activity at step one of the sequential analysis - and was, therefore, not required to discuss the medical evidence or the opinions of the physicians[32] - the ALJ, nonetheless, continued with the sequential analysis.  Unfortunately, the ALJ also erred at step four in her continued analysis.

At step four, the ALJ found that Plaintiff could perform the full range of medium level exertional work.  In reaching this conclusion, the ALJ rejected the opinions of Plaintiff's treating physicians – Dr. Mills and Dr. Karp – not on the basis of a differing opinion expressed by another doctor[33] or medical source, but rather because the ALJ

---

[31] Both of these regulations are entitled "Work which exists in the national economy." Both of the cited subsections provide identical language:

> Inability to obtain work.  We will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy, but you remain unemployed because of –
> (1) Your inability to get work;
> (2) Lack of work in your local area;
> (3) The hiring practices of employers;
> (4) Technological changes in the industry in which you have worked;
> (5) Cyclical economic conditions;
> (6) No job openings for you;
> (7) You would not actually be hired to do work you could otherwise do; or
> (8) You do not wish to do a particular type of work.

[32] Se, Katz v. Secretary of Health and Human Services, 972 F.2d 290, 293 (9th Cir. 1992);  20 CFR 416.920.

[33] The ALJ also rejected the opinions of the non-examining state agency physicians based on new evidence submitted after the RFC assessments.

reached a different conclusion after viewing the medical records.[34] Indeed, the ALJ's finding appears to be based solely on Plaintiff's continued part-time work as a tow-truck driver. While Plaintiff's continued part-time work is relevant, the ALJ failed to consider or even discuss the physical and mental demands of Plaintiff's part-time work.[35] Altlhough Plaintiff's work history might have supported the ALJ's finding that Plaintiff could perform a full range of medium level exertional work, the ALJ improperly substituted her own judgment of Plaintiff's condition for that of the medical experts.[36] Accordingly, the ALJ's conclusion that Plaintiff could perform a full range of medium level work was not supported by substantial record evidence.

## V. **CONCLUSION**

In view of the foregoing, the decision of the Commissioner is due to be **REVERSED and REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner, for an Administrative Law Judge to reconsider whether Plaintiff was engaged in substantial gainful activity at step one of the sequential analysis, and to the extent that the ALJ concludes that Plaintiff's part-time work constitutes substantial gainful activity, to discuss and identify the evidence, which supports such a conclusion. Further, to the extent that the ALJ does not conclude that Plaintiff engaged in substantial gainful activity at step one, the ALJ should then reconsider Plaintiff's RFC

---

[34] See Hillsman v. Bowen, 804 F.2d 1179, 1182 (11th Cir. 1986).

[35] See 20 C.F.R. §404.1520(e).

[36] See Freeman v. Schweiker, 681 F.2d 727, 731(11th Cir. 1982).

based on the medical evidence. The Clerk is directed to enter final judgment in favor of the Plaintiff consistent with this Order and to close the file

 **IT IS SO ORDERED.**

 **DONE AND ORDERED** in Ocala, Florida, on March 19, 2008.

                GARY R. JONES
                United States Magistrate Judge

Copies to:
 All Counsel